**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THELMA BOUCHER, ARDITH
BALLARD, JOSEPH W. KENNEDY III
and LOCAL 226, AFL-CIO,
    *Plaintiffs-Appellants,*

v.

DAN SHAW, MICHAEL VILLAMOR,
JAMES VAN WOERKOM, DOES 1-50,
    *Defendants-Appellees.*

Nos. 05-15454 and
05-15702

D.C. No.
CV-04-01738-PMP

OPINION

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, District Judge, Presiding

Argued and Submitted
February 15, 2007—San Francisco, California

Filed July 27, 2009

Before: J. Clifford Wallace, Richard D. Cudahy,* and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge Cudahy

---

*The Honorable Richard D. Cudahy, Senior United States Circuit Judge
for the Seventh Circuit, sitting by designation.

9731

## COUNSEL

Richard G. McCracken, McCracken, Stemerman, Bowen and Holsberry, Las Vegas, Nevada, and Kristin L. Martin, Davis, Cowell & Bowe, LLP, San Francisco, California, for the plaintiffs-appellants.

Constance L. Akridge and Matthew T. Milone, Jones Vargas, Las Vegas, Nevada, for the defendants-appellees.

## OPINION

CUDAHY, Circuit Judge:

Three former employees of the Castaways Hotel, Casino and Bowling Center (the Castaways) and their local union sued the Castaways' individual managers for unpaid wages under state and federal law. The district court dismissed the plaintiffs' claims. This appeal raises three issues: (1) whether the Castaways' individual managers can be held liable for unpaid wages under Nevada law; (2) whether the union has standing to raise the state law claim; and (3) whether the managers can be held liable under the Fair Labor Standards Act (FLSA). We certified the first issue to the Nevada Supreme Court as a question of first impression under Nevada law. The state court held that individual managers cannot be held liable as "employers," and therefore that claim was properly dismissed by the district court, making the issue of the union's

BOUCHER v. SHAW                     9735

standing moot. The only remaining issue is whether a claim exists under federal law. We hold that it does, and therefore reverse and remand the FLSA claim to the district court.

## I. Background

The Castaways filed for Chapter 11 bankruptcy protection on June 26, 2003.[1] The individual plaintiffs were discharged in January 2004, when the Castaways was operating as the debtor-in-possession. On February 10, 2004, after the plaintiffs were discharged, the Chapter 11 petition was converted to a Chapter 7 liquidation, and the Castaways ceased operations. The individual plaintiffs, Ardith Ballard, Thelma Boucher and Joseph Kennedy III, filed suit in Nevada state court seeking to recover unpaid wages for themselves and for a class of Castaways employees.[2] Ballard alleges that she has not been paid for the last pay period that she worked at the Castaways. Boucher alleges that she was not paid for the final pay period until two weeks after her employment was terminated. All three individual plaintiffs allege that they have not been paid their accrued vacation and holiday pay. Culinary Workers Union, Local 226 (Local 226 or the union) seeks to recover wages that were withheld as dues from the paychecks of Thelma Boucher and other employees. The plaintiffs assert claims under Chapter 608 of the Nevada Revised Statutes and the FLSA, 29 U.S.C. § 206(a).

The defendants are three Castaways' managers. Dan Shaw was the Chairman and Chief Executive Officer of the Castaways at the time the plaintiffs were discharged. Michael Villamor was responsible for handling labor and employment matters at the Castaways. And James Van Woerkom was the Castaways' Chief Financial Officer. Shaw had a 70 percent

---

[1]The defendants in their brief refer to the Castaways as VSS Enterprises LLC dba The Castaways Hotel, Casino and Bowling Center.

[2]There is no indication from the briefs that any class had been certified by the time the district court dismissed the case.

ownership in the Castaways, and Villamor had a 30 percent ownership interest. The plaintiffs allege that each defendant had custody or control over the "plaintiffs, their employment, or their place of employment at the time that the wages were due."

The plaintiffs filed this lawsuit in Nevada state court on October 14, 2004. On December 21, 2004, Defendant Shaw removed the case to the United States District Court for the District of Nevada and filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Villamor and Van Woerkom separately filed motions to dismiss, alleging the same grounds for dismissal as Shaw. The district court granted the defendants' motions and dismissed all of the plaintiffs' claims. *Boucher v. Shaw*, No. CV-S-04-1738-PMP (PAL) (D. Nev. Jan. 25, 2005); *Boucher v. Shaw*, No. CV-S-04-1738-PMP (PAL) (D. Nev. Feb. 18, 2005); *Boucher v. Shaw*, No. CV-S-04-1738-PMP (PAL) (D. Nev. Apr. 11, 2005). The district court concluded that the defendants were not "employers" under Nevada law, Local 226 lacks standing to bring a claim under Nevada law and the plaintiffs cannot maintain a cause of action under the Fair Labor Standards Act against the defendants. *Boucher v. Shaw*, No. CV-S-04-1738-PMP (PAL), slip op. at 1-2 (D. Nev. Jan. 25, 2005). The plaintiffs challenge each of these conclusions on appeal. We certified the state law question to the Nevada Supreme Court, and stayed the case pending its resolution. The Nevada Supreme Court has answered the state law question, and we incorporate that court's reasoning into our decision.

## II.  Discussion

This court reviews de novo dismissals for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 663-64 (9th Cir. 2008) (citation omitted). All allegations of material fact shall be taken as true and construed in the light most favorable to the nonmoving party. *See id.* at 664.

BOUCHER v. SHAW                                9737

### A. Whether Managers Can Be "Employers" Under State Law

Chapter 608 of the Nevada Revised Statutes provides a statutory scheme for wage protection. "An employer shall pay to the employee wages for each hour the employee works." Nev. Rev. Stat. § 608.016. "Whenever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately." Nev. Rev. Stat. § 608.020. "If an employer fails to pay: (a) Within 3 days after the wages or compensation of a discharged employee becomes due . . . the wages or compensation of the employee continues at the same rate from the day he . . . was discharged until paid or for 30 days, whichever is less." Nev. Rev. Stat. § 608.040(1).

The application of these statutes to the present case depends on whether the defendants were "employers" under Chapter 608. " 'Employer' includes every person having control or custody of any employment, place of employment or any employee." Nev. Rev. Stat. § 608.011. Whether the defendants as individual managers can be held to be "employers" under § 608.011 is a question of first impression. Neither the Nevada Supreme Court nor the Ninth Circuit had published an opinion analyzing the definition of employer under Nevada Revised Statutes § 608.011. Because this question has significant implications for Nevada's wage protection law and because we could not be certain how the Nevada Supreme Court would resolve the matter, we certified the question to the Nevada Supreme Court. *See Boucher v. Shaw*, 483 F.3d 613 (9th Cir. 2007).

**[1]** The Nevada Supreme Court held that individual managers could not be found liable as "employers" under Chapter 608. *Boucher v. Shaw*, 196 P.3d 959, 960 (Nev. 2008). The court explained that it would not expand the common law definition of "employer" to include individual managers without a clear expression of legislative intent. "At common law, an

employment relationship was defined by agency principles, under which, unless otherwise agreed, an agent (*e.g.*, a manager) for a disclosed principal (*e.g.*, the employing company) does not become party to the employment contract for the principal's debts." *Id.* at 961. As stated above, the Nevada legislature has enacted a statutory definition of "employer," but that definition does not "unequivocally indicate[ ]" the legislature's intent to depart from the common law rule. *Id.* at 963. In particular, Nevada's statutory definition of "employer" does not include corporate "managers," "agents" or "officers" in an enumerated list of "employers," as is the case in the statutes of other states. Instead, the statute ambiguously provides that " '[e]mployer' includes every person having control or custody of any employment, place of employment or any employee," Nev. Rev. Stat. § 608.011, without defining "person," or offering guidance on what constitutes "control or custody." In the absence of clear legislative intent, the Nevada court refused to presume that the Legislature meant to equate individual managers with "employers." *Id*.

**[2]** It follows that the managers in the present case cannot be held personally liable as "employers" under Chapter 608. The plaintiffs' state law claims were properly dismissed. Because the union is a plaintiff only with respect to the state law claim, the issue of the union's standing is moot and we do not reach it.

### B.  Whether Managers Can Be "Employers" Under the FLSA

**[3]** The only remaining claim seeks unpaid wages under the FLSA. Ballard is the only named plaintiff who has sued under the FLSA. The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce," a minimum wage. 29 U.S.C. § 206(a). "Any employer who violates the

provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Ballard alleges that the Castaways managers are individually liable for unpaid wages as "employers" under the FLSA. The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d).

We have held that the definition of "employer" under the FLSA is not limited by the common law concept of "employer," but " 'is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes.' " *Lambert v. Ackerley*, 180 F.3d 997, 1011-12 (9th Cir. 1999) (en banc) (quoting *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983)). *See also Real v. Driscoll Strawberry Assocs.*, 603 F.2d 748, 754 (9th Cir. 1979). The determination of whether an employer-employee relationship exists does not depend on "isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). The touchstone is the "economic reality" of the relationship. *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961).

**[4]** Where an individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability. *Lambert*, 180 F.3d at 1012 (internal quotation marks and citations omitted). In *Lambert*, we upheld a finding of liability against a chief operating officer and a chief executive officer where the officers had a " 'significant ownership interest with operational control of significant aspects of the corporation's day-to-day functions; the power to hire and fire employees; [the power to] determin[e][ ] salaries; [and the responsibility to] maintain [ ] employment records.' " *Lambert*, 180 F.3d at

9740         BOUCHER v. SHAW

1001-02, 1012 (quoting the district court's jury instruction). "The evidence, moreover, strongly supports the jury's determination that both Ackerleys exercised economic and operational control over the employment relationship with the sales agents, and were accordingly employers within the meaning of the Act." *Id.* at 1012. *See also Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007) (holding corporation's president personally liable where he had ultimate control over business's day-to-day operations and was the corporate officer principally in charge of directing employment practices); *United States Dep't of Labor v. Cole Enters., Inc.*, 62 F.3d 775, 778-79 (6th Cir. 1995) (president and 50 percent owner of corporation was "employer" within FLSA where he ran business, issued checks, maintained records, determined employment practices and was involved in scheduling hours, payroll and hiring employees).

**[5]** In the case at bar, Ballard has alleged that Defendant Villamor was responsible for handling labor and employment matters at the Castaways; Defendant Shaw was chairman and chief executive officer of the Castaways; and Defendant Van Woerkom was the Castaways' chief financial officer and had responsibility for supervision and oversight of the Castaways' cash management. The plaintiff also alleges that Shaw held a 70 percent ownership interest in the Castaways, Villemor held a 30 percent ownership interest and all three defendants had "control and custody of the plaintiff class, their employment, and their place of employment." (*See* Complaint ¶¶ 9-11.) Accepting these allegations of material fact as true, Ballard's claim withstands a motion to dismiss. *See Simon*, 546 F.3d at 664.

The defendants do not challenge their status as employers under the FLSA. Rather, they argue that any duty they had to pay wages to Castaways' employees ended with the conversion of the Castaways' Chapter 11 bankruptcy proceeding into a Chapter 7 liquidation. The defendants cite no authority for this proposition, but state merely that "[a]ny action under the

| BOUCHER v. SHAW | 9741 |
|---|---|

FLSA is properly directed to the Chapter 7 Trustee and not Shaw, Villamor or Van Woerkom." (Appellees' Br. at 14.) Ballard responds that the case was not converted to a Chapter 7 proceeding until February 10, 2004, at least eleven days after she was fired, so that even if the duty to pay wages ceased upon the conversion of the case, the managers were liable up until that point. In supplemental briefing ordered by the court, the defendants do not dispute that the bankruptcy was converted to a Chapter 7 on February 10. Yet they assert that the Castaways "had ceased its operations altogether at the time that Ballard's wage claim accrued," which appears to mean that although Ballard is owed wages for the final pay period *prior* to when the Castaways ceased operating on January 29, her paycheck was not due to be issued to her until *afterwards*. Ballard argues to the contrary, citing Nev. Rev. Stat. § 608.020, for the proposition that wages and compensation earned and unpaid at the time of discharge are to be paid immediately. We agree. Moreover, the defendants' subsequent argument that Ballard's FLSA claim should fail because her wage claim has already been satisfied in the bankruptcy proceeding raises a question of fact not properly resolved on a motion to dismiss.

As a more general matter, we cannot see how it makes a difference one way or the other whether the Castaways was in Chapter 11 or Chapter 7. The Castaways is not a defendant, and the defendants are not debtors. The defendants perhaps assume that the automatic stay or other injunctive power of the bankruptcy court has some effect on the plaintiff's claim, but they have not shown how that would be.

**[6]** Section 362 of the Bankruptcy Code embodies the automatic stay, which immediately applies when a debtor files a bankruptcy petition and is designed to preclude a variety of post-petition actions—both judicial and non-judicial—against the debtor or affecting property of the estate. *See* 11 U.S.C. § 362(a). The automatic stay is fundamental to bankruptcy law. It ensures that claims against the debtor will be brought

9742 BOUCHER v. SHAW

in one place, the bankruptcy court. The stay protects the debtor by giving it room to breathe and, thereby, hopefully to reorganize. The stay also protects creditors as a group from any one creditor who might otherwise seek to obtain payment on its claims to the others' detriment. *See, e.g.*, *Chugach Forest Prods., Inc. v. Northern Stevedoring & Handling Corp.*, 23 F.3d 241, 243 (9th Cir. 1994) (quoting *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 585 (9th Cir. 1993)).

**[7]** As a general rule, the automatic stay protects *only* the debtor, property of the debtor or property of the estate. *See* 11 U.S.C. §§ 362(a); 541(a) (defining property of the estate); *Advanced Ribbons and Office Prods., Inc. v. U.S. Interstate Distrib., Inc.*, 125 B.R. 259, 263 (9th Cir. BAP 1991) (citation omitted); *see also Chugach*, 23 F.3d at 246. The stay "does not protect non-debtor parties or their property. Thus, section 362(a) does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor." *Chugach*, 23 F.3d at 246 (citations omitted). We have refused to extend the automatic stay to enjoin claims against a contractor-debtor's surety, even though a surety bond guarantees the contractor-debtor's performance. *See In re Lockard*, 884 F.2d 1171, 1178-79 (9th Cir. 1989). In *Lockard*, we reasoned that extending the stay was inappropriate because the surety, not the contractor-debtor, puts its property directly at risk of liability to creditors in the event of nonpayment by the contractor-debtor, and therefore a surety bond is not property of the bankruptcy estate. *Id.* at 1178. We found that this was the case even though allowing a claim against the surety would trigger the surety's right to recourse against the debtor. *Id.* Similarly, the automatic stay does not protect the property of parties such as officers of the debtor, even if the property in question is stock in the debtor corporation, and even if that stock has been pledged as security for the debtor's liability. *Advanced Ribbons*, 125 B.R. at 263.

**[8]** We have never addressed the question whether a company's bankruptcy affects the liability of its individual manag-

BOUCHER v. SHAW 9743

ers under the FLSA. But our case law regarding guarantors, sureties and other non-debtor parties who are liable for the debts of the debtor leaves no doubt about the answer: the Castaways bankruptcy has no effect on the claims against the individual managers at issue here.

**[9]** This is, in fact, an easier case than our precedent cited *supra*. Here, the plaintiff's claim does not seek to reach property of the managers that has been pledged to secure the Castaways' debt, or that would otherwise impact property of the estate. The individual managers generally are not liable for debts of the debtor, and even if they were, the plaintiff's statutory claim against the individual managers is unrelated to any of the Castaways' debts. Nor does the plaintiff seek damages based on an insurance policy held by the debtor. *Cf. A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 998-1004 (4th Cir. 1986). The plaintiff's claim is not being used as an alternative route to recoup property of the estate, and therefore cannot be said to be "related to" the bankruptcy proceeding, such that it would be swept into the bankruptcy court's jurisdiction under 28 U.S.C. § 1334(b). *See Celotex v. Edwards*, 514 U.S. 300, 307-08 (1995). Neither party has alleged that the estate would be diminished by any judgment in favor of the plaintiff, nor is there any indication in the record that the Castaways would be required to indemnify the individual managers for legal expenses or any judgment against them in this case. *Cf. In re Minoco Group of Cos.*, 799 F.2d 517, 518 (9th Cir. 1986) (affirming bankruptcy court's finding that insurance policy cancellation was automatically stayed because of its impact on debtor's obligation to indemnify officers and directors). However, if the liability of the non-debtor party *were* to affect the property of the bankruptcy estate, such as by a requirement that the debtor indemnify the non-debtor or by payment of the liability from a director's and officer's insurance policy, it may be necessary for the plaintiff in such a case to proceed against the non-debtor party through bankruptcy proceedings. *See id.*; *A.H. Robins Co.*, 788 F.2d at 1007-08.[3]

---

[3]Even then, the bankruptcy court would first need to extend the automatic stay under its equity jurisdiction. " '[S]uch extensions, although

| 9744 | Boucher v. Shaw |
|---|---|

In this case, the parties have not raised any claims that this suit would affect the bankruptcy estate, so we need not reach this question.

**[10]** To the contrary, the managers are independently liable under the FLSA, and the automatic stay has no effect on that liability. The defendants in their supplementary briefing repeatedly assert that they were unable to find any authority in support of this proposition. We have found at least two cases holding that individual managers can be held liable under the FLSA even after the corporation has filed for bankruptcy. *See Donovan v. Agnew*, 712 F.2d 1509, 1511, 1514 (1st Cir. 1983) (finding managers of bankrupt corporation individually liable under FLSA and noting, "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."); *Chung v. New Silver Palace*, 246 F. Supp. 2d 220, 226 (S.D.N.Y. 2002) ("The automatic stay . . . affects only [the debtor]; it does not apply to plaintiff's [FLSA] claims against the [debtor]'s non-debtor co-defendants.").

---

referred to as extensions of the automatic stay, [are] in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual need to take this action to protect the administration of the bankruptcy estate.' " *Chugach*, 23 F.3d at 247 n.6 (quoting *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993)). *See also* 11 U.S.C. § 105 (providing the bankruptcy court's power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title"); 28 U.S.C. § 1334(b) (establishing the bankruptcy court's jurisdiction over matters that are "related to" the bankruptcy). As in *Chugach*, the proceedings in the case at bar "are entirely retrospective." 23 F.3d at 247 n.6. From all that appears, the defendant-managers never requested that the bankruptcy court enjoin the plaintiff's FLSA claim. The managers' subsequent request for dismissal of the plaintiff's claim in the district court is not analogous to a prospective request for an injunction from the bankruptcy court. *Id.*

## III. Conclusion

The district court correctly held that the plaintiffs could not state a claim against the managers for unpaid wages under Nevada law, and therefore correctly dismissed that claim, making the issue of the union's standing moot. However, the plaintiffs have adequately stated a claim under the FLSA.

AFFIRMED in part, REVERSED in part and REMANDED for proceedings consistent with this opinion. The parties shall bear their own costs.